FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 21, 2022

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>WALTER RILEY & JANE DOE RILEY, individually and as the marital community composed thereof, d/b/a RILEY'S RIVER RANCH,<br><br>        Defendants. | No. 2:18-CV-00024-SAB<br><br>**CONSENT DECREE** |

Before the Court is the parties' Stipulated Motion for Settlement Agreement and Consent Decree, ECF No. 60. The parties indicate they have entered into a settlement agreement. They ask the Court to accept the agreement into the record and issue a Consent Decree accordingly.

Approval of a proposed consent decree is within the discretion of the Court. *United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990). Before approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable. *Id.* "The court need only be satisfied that the decree represents a 'reasonable factual and legal determination.'" *Id.* at 581 (citation omitted).

The Court has reviewed the Settlement Agreement and Consent Decree and the filings in this case. The Court concludes the plan is fair, reasonable, and legal, and good cause exists to accept it into the record as a binding judgment.

**CONSENT DECREE** *1

Accordingly, **IT IS HEREBY ORDERED**:

1.      The parties' Stipulated Motion for Settlement Agreement and Consent Decree, ECF No. 60, is **GRANTED**.

2.      The parties' Settlement Agreement and Consent Decree, attached to this Order as Exhibit 1, as well as the incorporated Exhibits 1A through 6, are **ACCEPTED** into the record as part of this Consent Decree,

3.      The parties may seek enforcement of the requirements of the Settlement Agreement and Consent Decree by motion to the Court under its ongoing, continuing supervision. This Court shall retain continuing jurisdiction over this action to enforce or modify the Consent Decree, consistent with applicable law or to resolve all disputes arising hereunder, as may be necessary or appropriate for construction or performance of the Settlement Agreement and Consent Decree. During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the intended purpose of the Consent Decree.

4.      Upon its entry by the Court, the Consent Decree shall have the force and effect of a final judgment. Any modification of this Consent Decree shall be in writing and shall not take effect unless signed by both the Plaintiff and the Defendants, and approved and entered by the Court.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, **and** close the file.

**DATED** this 21st day of December 2022.



Stanley A. Bastian
Chief United States District Judge

**CONSENT DECREE** *2

# EXHIBIT 1

*Vanessa R. Waldref*
United States Attorney (EDWA)
Timothy M. Durkin
Derek T. Taylor
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 2:18-cv-00024-SAB |
| Plaintiff, | ) |
| | ) **SETTLEMENT AGREEMENT** |
| vs. | ) **& CONSENT DECREE** |
| | ) |
| WALTER RILEY & JANE DOE | ) |
| RILEY, individually and as the marital | ) |
| community comprised thereof, d/b/a | ) |
| RILEY'S RIVER RANCH, | ) |
| | ) |
| Defendants. | ) |
| | ) |

COMES NOW the Plaintiff, the United States of America, through its executive agency, the United States Army Corps of Engineers ("Corps" or "Plaintiff" or "USACE"), by its counsel with the United States Attorney's Office for the Eastern District of Washington ("USAO"), and the Corps' Office of District Counsel (ODC), Walla Walla District, and the Defendants Walter Riley and Mrs. Jane Doe (Jeannie) Riley, husband and wife, and d/b/a/ Riley's River Ranch, Mr. Riley as Trustee of the Lester Riley Trust, and Chad Lindgren as remainderman beneficiary of said Trust and any business or entity doing business as (d/b/a) Riley's River Ranch (including

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 1

officers / agents / manager(s)), individually and jointly ("Rileys" or "Defendants"),[1] through their counsel, Toni Meacham, Attorney at Law, PLLC, and stipulate and agree that they have reached a Settlement Agreement and Consent Decree (SACD) that provides for the mutual resolution of this case.

## I.    RECITALS

WHEREAS the Plaintiff holds legal title to certain public lands encompassing segment tracts 302, 303, 304-1, 309, and 312 in sections 4, 5, 8, and 9 of township 13N and Range 40E, Willamette Meridian, located within what is now Central Ferry Habitat Management Unit ("HMU") of the Little Goose Lock and Dam Project in Central Washington state, said land having been purchased by the United States for that Civil Works water resources project;

WHEREAS, Plaintiff has authority to hold title and to manage its federal lands pursuant to powers under the Constitution, primarily the Property Clause, which gives Congress the power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States. U.S Const., Art IV. The Supreme Court has consistently interpreted this power to be extremely expansive, repeatedly observing that the power over the public land thus entrusted to the United States is without limitations. *Kleppe v. New Mexico*, 426 U.S 529, 539 (1976); *United States v. San Francisco*, 310 U.S 16, 29 (1940). The United States has the right and authority to manage all of its lands. *Kleppe, id.; State of Nevada v. Watkins,* 914 F.2d 1545, 1552 (9th Cir. 1990), cert. denied 111 S.Ct. 1165;

---

[1]    Plaintiff relies upon the accuracy of information provided by Defendants in identifying those persons – entities having an ownership or operator or managerial interest in Riley's River Ranch's business, and those having an interest in the real estate upon which Riley's River Ranch conducts its livestock business in Whitman County, WA (EDWA).

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 2

1
2
3
4
5
6

WHEREAS, the Corps' multi-purpose Civil Works projects are generally authorized under the Commerce Clause (Article 1, Section 8, Clause 3) of the U.S. Constitution, with specific project authorization most commonly found in a series of River and Harbor and Flood Control acts passed by Congress. Acquisition of real property for civil works projects, provided for by law, is authorized in 33 U.S.C. 558b, 591-595a and 701. See also, Chapter 5, Engineer Regulation 405-1-11;

7
8
9
10
11
12

WHEREAS, the construction and future operation and maintenance of the Little Goose Lock and Dam Project was authorized by Congress in the River and Harbor Act of 1945 (Public Law 790-14). The Corps is charged by federal statute to manage, administer and protect the public lands encompassing the Little Goose Lock and Dam project. 16 U.S.C. § 460d. Public use (and unauthorized use) of water resources development projects administered by the Corps is governed by 36 C.F.R. Part 327;

13
14
15
16
17
18
19
20

WHEREAS, Defendants own or have an interest in land (in fee) adjacent to the Plaintiff's federal land in tracts 302, 303, 304-1, 309, and 312 in sections 4, 5, 8 and 9 of township 13N and Range 40E, Willamette Meridian, which is used primarily as a livestock (e.g., cattle) ranch. Tract 303 was purchased from the Defendants' predecessor in interest for use in the Little Goose Lock and Dam Project, while the other tracts were acquired from other parties. Defendants maintain such lands were historically used for livestock production before the land was purchased by the United States;

21
22
23
24
25
26

WHEREAS, the Plaintiff alleges that Defendants have, from at least 2011 to approximately 2021, failed to prevent livestock from entering USACE managed federal lands (i.e., primarily during winter calving and feeding operations); since at least 2011 to the present, have deposited other ranch equipment, materials and associated personal property (i.e., fence posts, feeders, etc.) on the USACE's managed land; and, have made other disturbances - modifications to the public lands within

27
28

Central Ferry HMU. These encroachments are shown in the attached maps of Exhibits 1A, 1B[2], and 2, which are incorporated herein.

WHEREAS, Defendants deny the nature and extent of Plaintiff's allegations, but acknowledge that their cattle have, from time-to-time, entered and remained upon the USACE managed federal lands. Defendants further admit that they, their employees/agents, predecessor in interest and/or third parties, have deposited, left and/or stored ranch equipment and other personal property (fence posts, feeders, etc.) on Plaintiff's federal lands, or made certain modifications thereto. However, Defendants do dispute and deny certain aspects of the alleged trespasses / encroachments (e.g., nature, length/frequency, etc.) and further maintain they acted in good faith due to confusion from the original government brass cap boundary monuments;

WHEREAS, Plaintiff also alleges Defendants, their predecessor in interest, or persons at their direction, constructed (and have for decades maintained) a portion of a building that encroaches on Corps managed federal land, within the area that is now the Central Ferry HMU. *See* Exhibits 1A, 1B and 3;

WHEREAS, the Plaintiff had the lands in question surveyed in 2014 and provided a copy of the survey to Defendants. Exhibit 6 (Survey Map). The survey generally confirmed the Corps' understanding of the land boundary, though a small section of the Corps' fence-line near Highway 127 was determined to have

---

[2] Exhibit 1A is the original January 12, 2018, image/map of encroaching equipment, materials and other items Plaintiff alleges were put/placed on federal land by Defendants since at least 2011, which are primarily associated with livestock ranching operations.  Exhibit 1B is an updated image/map showing encroaching items remaining on federal land, which Defendants has agreed to remove in accordance with the terms of this SACD, excluding the items identified in the approximate 1/3 acre of federal land proposed for transfer to Defendants, unless such transfer does not occur pursuant to the terms of this SACD.

inadvertently veered off public land and was constructed on Defendants' adjacent land, which Plaintiff has conveyed several offers to remove and realign. *Id.;*

WHEREAS, after lengthy discussions and multiple efforts to resolve the parties' dispute pre-suit failed, a Complaint was approved by the U.S. Attorney and the United States' Department of Justice, and was filed against Defendants on January 19, 2018;

WHEREAS, the Plaintiff and Defendants now wish to reach a lasting resolution of the alleged trespasses by Defendant's livestock and ranch business, including personal property encroachments, the disturbances – modifications to the federal lands, and Defendants' building partially constructed on federal lands;

WHEREAS, Plaintiff and Defendants further agree that settlement of this case serves their interests as well as the public's interest, and that entry of this Settlement Agreement and Consent Decree (SACD) is an appropriate method and means for resolving the Plaintiff's claims against Defendants, and *vice versa*; and,

WHEREAS, the Court finds that this SACD is a reasonable and fair resolution of the Plaintiff's claims against Defendants and should serve to adequately protect the public's interests as well.

## II.  SETTLEMENT AGREEMENT

**A.    Preamble.** The Settlement Agreement and Consent Decree (SACD) herein is made by and among the United States, through its agency, the United States Army Corps of Engineers ("United States," "Plaintiff" or "USACE"), and Walter "Sonny" Riley and Mrs. Jane Doe (Jeannie) Riley, husband and wife, any person or entity d/b/a/ Riley's River Ranch, Mr. Riley as Trustee of the Lester Riley Trust, and Chad Lindgren as remainderman beneficiary of said Trust, and any business or entity doing business as (d/b/a) Riley's River Ranch (including officers / agents / manager(s)), individually and jointly ("Rileys" or "Defendants"). The parties understand and agree the terms "United States" or "Plaintiff" used herein shall refer

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 5

only to the United States Army Corps of Engineers ("USACE"). No other agency, instrumentality or agent of the United States shall be deemed to be a party to this SACD, nor shall any claims that any other agency, instrumentality or agent is, has or may be impaired or compromised in any way by this SACD.

In the shared interest of avoiding the cost, expense and uncertainty of further litigation, the parties specify below the desired terms and condition of their SACD, which will settle, compromise and resolve the claims described in the United States' Complaint filed in this action. *ECF 1*. It is the intent of the parties, except as otherwise provided herein, that this SACD shall constitute the full settlement and satisfaction of the Plaintiff's claims for trespass and damages against Defendants. *Id.* Pursuant to the terms – conditions of this SACD, the Plaintiff and Defendants mutually covenant and agree:

**1.    The Plaintiff will:**

(a)    Administratively dispose to Defendants an approximate 1/3 acre of land underlying the encroaching building and immediate appurtenances thereto (tentatively identified in the red outline on the attached map (Exhibit 3)), and which will be more precisely defined by a future disposal survey; *See also* Exhibit 4, Current estimate of projected Phases and Costs of Administrative Disposition process;

(b)    Transfer the property subject to any reservation or limitation necessary for the operation of the Little Goose Dam and Reservoir Project (e.g., flowage easement, etc.);

(c)    Remove or realign the small section of the federal fence to parallel the surveyed boundary;

(d)    Perform the administrative disposal in a timely manner in accordance with all applicable USACE policies and procedures;

(e)    Bill Defendants the usual and customary administrative costs incurred in a timely manner. These costs – expenses are those reasonably associated with

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 6

USACE's administrative disposition of the subject 1/3rd acre. The present estimated cost of the administrative disposition - transfer is approximately $50,000 - $100,000, with the actual cost dependent upon several review and disposition contingencies, which contingencies the USACE has no control over and which have been discussed and reviewed by the parties in advance of this SACD.

(f)     Plaintiff shall return any unused funds to Defendants at the close of the process and as soon as reasonably possible after the land disposition is complete. Plaintiff has provided notice and Defendants acknowledge receipt of certain identified tasks/cost items that must be performed for the disposal action to be completed, along with a rough cost estimate (i.e., $50,000-$100,000). Plaintiff will endeavor to keep administrative costs to the reasonable minimum amount necessary for the Corps to complete required steps for the subject land disposition. Defendants may request an accounting at any point during the process, but such an accounting will itself require use of administrative funds, and will result in an administrative fee – cost; and,

(g)     Once the SACD has been executed by the parties and approved, and entered by the U.S. District Court, and Plaintiff has timely received all required deposits from Defendants for the performance of the administrative disposal of the subject 1/3 acre property, and transfer of the 1/3 acre has occurred, and Defendants have performed all of their other obligations specified herein, Plaintiff will file and submit to the U.S. District Court a stipulation providing for the dismissal of the liability – damages aspect of Plaintiff's current Complaint, leaving only the District Court's jurisdiction for supervision  – enforcement authority over the parties' SACD.

**2.     Defendants will:**

(a)     Pay all the Plaintiff's reasonably incurred administrative costs associated with the disposal of the 1/3-acre of land underlying the encroaching building and immediate appurtenances thereto, and agree to voluntarily make the necessary

deposits to cover the reasonable administrative costs, as determined by the Corps (*see Section (c) below*);

(b)    Pay the fair market value associated with disposal of the 1/3-acre of federal land identified in Section II.2.(a) above, absent any improvements (e.g., building) constructed by Defendants;

(c)    Periodically make deposits to the USACE in advance of the incurred administrative costs – expenses – i.e., two deposits of $20,000 in 60-day intervals; with the last deposit of approximately $10,000 (or less and if necessary) within 45 days after the second $20,000 deposit. These fees shall be used for the payment of the estimated costs of the administrative disposal of the 1/3-acre of land underlying the encroaching building and immediate appurtenances thereto;

(d)    Remove all personal property – debris Plaintiff has alleged Defendants placed on federal lands – *i.e.,* materials, equipment, fencing, junk, refuse, rubbish, etc. -- which are identified in Exhibit 1B, except for that portion of the concrete pad identified in Exhibit 1B. When marking the boundary, pursuant to Exhibit 5, Defendants surveyor shall mark with weather resistant paint any portion of the pad which falls upon federal land and Defendant take no action to maintain that portion of the pad. The removal of all other Exhibit 1B items will occur within 60 days of the date this SACD is signed and will be performed to Plaintiff's satisfaction, which approval cannot be unreasonably withheld. Items identified in Exhibit 1B within the approximate 1/3-acre area of federal land proposed for transfer to Defendants do not require removal unless the transfer does not occur pursuant to the terms of this SACD.

(e)    All parties shall have the right to document, at their own expense, the removal of the encroaching personal property and may have any experts they wish document such removal for the purpose of addressing any future dispute/disagreement over encroachment removal, subject to the access coordination requirements in Section III.C.4.

(f)    Prevent future livestock trespasses and associated encroachments on federal lands at the Central Ferry HMU, as shown on Exhibits 1A, 1B and Exhibit 2, by whatever means Defendants determine to be effective, including (as mentioned by Defendants) any experimental practices, such as cattle collars, etc.

(g)    Complete certain limited restoration activities on the subject federal lands within the Central Ferry HMU, as outlined in Exhibit 5, but excluding the approximate 1/3-acre to be conveyed to Defendants. Restoration shall address injury - damages resulting from land modifications and other encroachments on USACE lands (e.g., two dirt/gravel roads), unless the Plaintiff determines (in writing to Defendants) to reduce or eliminate an identified restoration item as unnecessary.

**B.    Additional Terms – Conditions**

1.    This Settlement Agreement may not be changed altered or modified except in writing signed by all parties hereto. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by writing signed by all parties.

2.    The parties agree to cooperate fully and act in good faith to execute any and all supplementary documents (e.g., transfer deed) and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement and Consent Decree (SACD).

3.    Nothing in this SACD constitutes an agreement by the United States concerning the allowable characterization of the amounts paid hereunder for purposes of any proceeding under Title 26.

4.    This SACD is a civil agreement and is not intended to limit any criminal enforcement authority or actions for future livestock trespasses, associated encroachments, damage to federal property or other violations of law/regulation.

5.      This SACD may not be discharged except by performance in accordance with its terms or as otherwise agreed to and altered or modified in writing signed by all parties hereto.

## III.    <u>ORDER OF THE COURT</u>

THEREFORE, based on the foregoing recitals and stipulation, and before the taking of any testimony upon the pleadings, and without further adjudication of any issue of fact or law, and upon stipulation and consent of the parties hereto, by and through their authorized representatives, and in accordance with Federal Rules of Civil Procedure, Rule 54(b), it is hereby,

ORDERED, ADJUDGED and DECREED as follows:

### A.    Jurisdiction and Venue

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this district court because Plaintiff's federal land and its mandated management activities are within the exterior boundaries of the U.S. District Court for the Eastern District of Washington (WAE). Further, Defendants' land and ranching business is in Whitman County, Washington, and the actions – conduct giving rise to Plaintiff's claims occurred and/or are occurring in Whitman County, Washington, which is also located within the WAE District. Further, the Court has jurisdiction over the enforcement of the parties SACD.

### B.    Applicability

1.      The obligations of this Consent Decree shall apply to and be binding upon Plaintiff and Defendants, including Defendants' officers, directors, agents, employees, successors and assigns and any person, firm, trust, association or corporation who is or will be acting in concert or in participation with any of the

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 10

Defendants, regardless of whether such person has notice of this Consent Decree. In any action to enforce this Consent Decree against Defendant(s), the Defendant(s) shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with the Defendant, to take any actions necessary to comply with the provisions herein.

2.      Defendants shall provide written notice and a true copy of this Consent Decree to any successor(s) in interest and/or assigns as part of any transfer of ownership or other interest in Defendants' land.

### C.      Scope of Consent Decree

1.      This Consent Decree shall constitute a complete and final settlement of all of Plaintiff's civil claims for relief against Defendants for their alleged past encroachments / trespasses on the subject Central Ferry HMU public land, and for any potential civil claim Defendants may have for the minor portion of the Plaintiff's fence that was inadvertently constructed outside the now surveyed boundary. Plaintiff and Defendants will mutually cooperate to ensure performance of their respective obligations by December 31, 2023, and at the earliest possible opportunity.

2.      Defendants' obligations under this Consent Decree are joint and several.

3.      Except for the access permitted to all members of the public for recreational purposes, or as required by this consent decree, Defendants are enjoined from any further use of Central Ferry HMU and are specifically enjoined from using the subject federal lands for any ranching or other business or commercial uses, or any related activities (i.e., *inter alia,* livestock business, ranching, etc.).

4.      Defendants shall coordinate with USACE on the time and manner of the access required to complete their responsibilities and the USACE shall cooperate and coordinate with Defendants on the time and manner of the access required for Defendants to complete responsibilities under this agreement.

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 11

5.     This Consent Decree in no way affects or relieves either Party of their responsibility to comply with any other applicable federal, state, or local laws, regulations and/or permit(s)

6.     This Consent Decree in no way affects the relative rights of the Parties as against any other person – entity that is not a party to this Consent Decree.

7.     Both Parties reserve all legal and equitable remedies available to enforce the provisions of this SACD.

8.     Nothing in this Consent Decree shall constitute an admission of fact or law by any party.

### D.    Plaintiff's Obligations

1.     At the earliest opportunity after this Consent Decree becomes final, but not later than December 31, 2023, the Corps shall remove or realign the section of federal fence which was found not to adhere to the surveyed boundary. Corps staff will coordinate with Defendants to schedule a reasonable time to accomplish the fence removal or re-alignment work. Corps staff will remove any and all debris after completion of the alignment work and will not cause damage to Defendants' property during the removal or re-alignment process;

2.      The Corps shall, upon receipt of funds by Defendants as outlined in Section II.2 (above), timely begin work on the administrative disposal of the subject 1/3-acre land to Defendants, including timely review and coordination with Defendants' contractors/consultants.

3.     The Corps will make good faith efforts to complete the disposal in a timely manner (i.e., within one year of receipt of the third deposit made in accordance with Section II.2.C, which is contingent upon Defendants complying with all other terms and conditions).

4.     The Parties understand that certain aspects of the land disposal will require consultation with outside entities, which may result in delays over which

neither party may have control. The parties mutually agree to exercise good faith in pursuing the timely processing – completion of the administrative land disposal.

### E. Defendants' Obligations

1.      Defendants shall ensure that their livestock do not trespass on Central Ferry HMU public lands in the future, as shown in Exhibits 1A, 1B and 2. The manner of such prevention or dissuasion is left to Defendants' discretion as capable livestock owners.  However, future cattle trespass operations may constitute violations of the parties' Consent Decree and may be the subject to a motion to show cause and a request for remedial action deemed just and reasonable by the Court under its continuing jurisdiction, as more specifically described in Section III.I.1 below;

2.      Defendants shall remove all remaining encroaching equipment, materials and items on federal lands identified in Exhibit 1B, except for that portion of the concrete pad identified in Exhibit 1B. When marking the boundary, pursuant to Exhibit 5, Defendants' surveyor shall mark with weather resistant paint any portion of the pad which falls upon federal land and Defendant shall take no action to maintain that portion of the pad. Defendants shall complete removal of Exhibit 1B items within 60 days of this SACD being signed. Items identified in Exhibit 1B within the approximate 1/3-acre area of federal land proposed for transfer to Defendants do not require removal unless the transfer does not occur pursuant to the terms of this SACD. Defendants will not cause damage to federal property during the removal. Such removal will be to the satisfaction of Plaintiff, which will not be unreasonably withheld.

3.      All parties shall have the right to document, at their own expense, the removal of such personal property and have any experts they wish document such removal for the purpose of assisting that party with addressing any future dispute/disagreement, subject to the access coordination requirements in Section III.C.4 above.

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 13

4.      All parties shall perform in good faith the land disposal process for the transfer of the approximate 1/3-acre identified in Section II.A.1(a). The disposal land transfer will be directed by the Corps and performed in accordance with federal law and Corps regulations and policies. This includes receipt of required periodic deposit payments by Defendants to the Corp for applicable administrative fees, as well as the determined fair market value of the approximate 1/3-acre described in Exhibit 3. Said fair market value will be absent from any improvements (e.g., building) made by Defendants;

5.      Defendants will timely provide contractor/consultant information/reports to the Corps for its review and administrative processing. Defendants shall also maintain communications with the Corps during the land disposal – transfer process.

6.      Plaintiff will timely review said information/reports and will timely communicate to Defendants whether said information/reports satisfies various elements of administrative land disposal process. Plaintiff also agrees, barring changes in law/policy/circumstance, they shall follow the administrative process outlined on Exhibit 4 and will not add additional requirements to this process.

7.       Defendants shall provide an initial administrative fee deposit of not less than $20,000 to the Corps in 60-day intervals beginning 60 days after the SACD is executed by the parties.  *See e.g.,* Exhibit 4, Current Projected Phases – Costs for administrative disposition process. A second deposit of $20,000 (if necessary) shall be made 60 days after the first deposit; and another deposit in the amount of $10,000 (if necessary and required by Defendant's documented administrative review process) shall be paid 45 days after the second $20,000.00 deposit.

8.      Plaintiff shall return any unused funds to Defendants as soon as reasonably practical after the disposal, and the other personal property removal and restoration settlement terms – conditions have been performed and are completed. Plaintiff has identified the tasks/cost items that must be performed to complete the

administrative disposal process and have provided Defendants with a rough cost estimate of the administrative process. *See* Exhibit 4. Plaintiff will endeavor to keep administrative costs to the necessary minimum. Defendants may request an accounting at any point during the process, but such an accounting may itself require use of deposited administrative funds;

9.     Defendant shall also promptly make any additional payments of administrative fees that are administratively incurred by the Corps, as needed to complete the land disposition – transfer process (i.e., Defendants' payment will be provided to the Corps within 30 days of notice of amount due and an accounting or written explanation of the need for more funds). The Corps will use first those funds that were first deposited and Plaintiff shall provide timely payment of the deposits required in Section III.E.7, which will need to be paid before the Corps can work on steps necessary to effectuate the administrative property disposition process;

10.     Defendants shall complete the restorations described in Section II.A.2(g) above, as outlined in Exhibit 5, in accordance with the timelines stated herein and will complete those obligations by no later than December 31, 2023. Plaintiff has alleged that these restoration activities are necessary due to actions by Defendants, Defendants' employees, agents or predecessor in interest, or third parties, as previously discussed in Exhibit 5.

11.     All parties shall have the right to document, at their own expense, the completion of such restoration activities and have any experts they wish document such restoration for the purpose of assisting that party with addressing any future dispute/disagreement, subject to the access coordination requirements in Section III.C.4.

### F.     Dispute Resolution

1.     Should any dispute arise with respect to the meaning or requirements of this Consent Decree, the dispute(s) shall, in the first instance, be the subject of good

faith negotiations in and among the parties to this SACD. The period for negotiations shall not extend beyond thirty (30) days, starting first with written notice by one party to the other affected party/parties that a dispute exists as to a term or condition of performance, which the party reasonably believes needs to be addressed – negotiated (unless the parties subsequently agree in writing to waiver this notice provision).

2.      Following expiration of the 30-day negotiation period (or after waiver of the 30-day notice – negotiation requirement), if the affected parties are still unable to agree on the meaning or terms of performance in this SACD, any affected party may petition the Court (via motion on the parties' Consent Decree) for resolution of any dispute;

3.      Any petition or motion for resolution (or enforcement) shall briefly set forth the nature of the dispute and a proposal for its resolution. Any other affected party to this SACD shall have thirty (30) days in which to respond to the petition and shall respond with that party's proposed resolution. In resolving the dispute between the parties, the controlling standard shall be which of the parties' proposals most appropriately fulfills the terms, conditions, requirements, and objectives of the parties' Consent Decree.

4.      The filing of a Petition asking the Court to resolve a dispute between the Parties concerning this SACD shall not extend or postpone any other obligation the Parties may have under this Consent Decree.

5.      Nothing in this Settlement Agreement and Consent Decree waives the right to seek other available civil and/or criminal remedies for future livestock trespasses, associated encroachments and/or damage to the Government's property, or civil and/or criminal remedies that may be available to Defendant(s) relative to future actions taken by Plaintiff.

/ / /

1

2

3

## G.    ADDRESSEES

All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

### 1.    TO THE CORPS:

Evan Carden, Esq.
Assistant District Counsel
United States Army Corps of Engineers
Walla Walla District
201 North 3rd Avenue, Walla Walla, WA 99362
(509) 527-7717
Evan.J.Carden@usace.army.mil

### 2.    TO THE UNITED STATES DEPARTMENT OF JUSTICE

Tim M. Durkin, Asst. U.S. Attorney or
Derek T. Taylor, Asst. U.S. Attorney
P.O. Box 1494, Ste. 340
Thomas S. Foley, Jr., Federal Courthouse
Spokane, WA  99210-1494
509 835-6319
Derek.Taylor@usdoj.gov

### 3.    TO DEFENDANTS:

Walter Riley
c/o Toni Meacham
1420 Scooteney RD
Connell, WA 99326
509-488-3289
ToniPierson@Rocketmail.com

Walter Riley
10505 SR 127
Pomeroy, WA 99347

Chad Lindgren
12802 SR 127
Pomeroy. WA 99347

*United States v. Walter Riley* – Settlement Agreement & Consent Decree - 17

### H.    Costs of Suit

Except as otherwise stated above, each party to this Consent Decree shall bear its own costs and attorney's fees in this matter. However, should Plaintiff and/or Defendants subsequently be determined by the U.S. District Court to have materially breached or violated the terms - conditions of this SACD, or engaged in bad faith litigation, the offending party may be held, at the U.S. District Court's discretion and in accordance with applicable law, to be liable for costs and/or attorney's fees resulting from that party's noncompliance with obligations required by the SACD, and enforcement of the same.

### I.    Continuing Jurisdiction of the Court

1.    The Parties may seek enforcement of the requirements of the SACD by motion to the District Court under its ongoing, continuing supervision created herewith and/or any other legal action or remedy available by law.  This Court shall retain continuing jurisdiction over this action to enforce or modify the Consent Decree, consistent with applicable law or to resolve all disputes arising hereunder, as may be necessary or appropriate for construction or performance of the SACD.

2.    The Parties may seek enforcement of the requirements of the SACD by motion to the District Court under its ongoing, continuing supervision created hereunder and/or any other legal action or remedy available by law.

3.    During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the intended purpose of this Consent Decree.

### J.  Modifications

Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment. Any modification of this Consent Decree shall be in writing and

shall not take effect unless signed by both the Plaintiff and the Defendants, and approved and entered by the Court.

### K.   Force Majeure

All parties shall perform the actions required under this SACD within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events which constitute a Force Majeure event. A Force Majeure event is defined as any event arising from causes beyond the control of parties, including their employees, agents, consultants and contractors, which could not be overcome by due diligence, and which delays or prevents the performance of an action required by this SACD within the specified time period.  A Force Majeure event does not include, for example, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, or changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a site, or actions by either party, their employees, agents, consultants or contractors. A Force Majeure event would include fire, flood, acts of third parties, wildlife, or other Act of God which prevented completion of tasks on schedule. In the event either party believes a Force Majeure event will prevent timely completion of a task, they shall contact the other parties to determine if there is a dispute over the event, or to create a replacement schedule, as appropriate. Even if delay is the result of a Force Majeure event, performance will still be completed at the earliest opportunity.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this _____ day of October 2022.

_____
STANLEY A. BASTIAN
Chief United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>INDEX OF INCORPORATED EXHIBITS</u>

The following attached Exhibits have been identified and stipulated upon, and are incorporated by reference into the parties' Settlement Agreement and Consent Decree (SACD):

**Exhibit 1A:**    2016 Aerial Photograph of Corps' and Defendants' properties, with identified trespass – encroachment items;

**Exhibit 1b:**    2022 Aerial Photograph of Corps' and Defendants' properties, with identified trespass – encroachment items (post Central Ferry fire – 2022);

**Exhibit 2:**    2015 Aerial Photograph of Corps' and Defendants' properties with environmental effects identified;

**Exhibit 3:**    Tentatively identified disposal area aerial map;

**Exhibit 4:**    Current estimate of projected Phases and related Costs of the USACE's Administrative Disposition process for transferring title of the proposed 1/3-acre of property to Defendant(s);

**Exhibit 5:**    Description and schedule of restoration actions Defendants are to perform on the subject USACE's federal lands within the Central Ferry HMU.

**Exhibit 6:**    2014 Survey Boundary Map

RESPECTFULLY SUBMITTED on October __25__ , 2022.

*Vanessa R. Waldref*
United States Attorney

*/s/ Tim M. Durkin  & Derek Taylor*
Timothy Durkin, AUSA
Derek Taylor, AUSA

RESPECTFULLY SUBMITTED on October __17__, 2022.

TONI MEACHAM, PLLC

*s/Toni Meacham*
Toni Meacham, Esq.
Attorney for Defendants

Dated this __8th__ of October 2022

*ShaiLin Y. KingSlack*
ShaiLin Y. KingSlack
Lieutenant Colonel, Corps of Engineers
District Commander

*/s/ Evan Ca den & Robe t Eskildsen*
Evan Carden, Asst. Dist. Counsel
Robert Eskildsen, Asst. Dist. Counsel
Office of District Counsel (Walla Walla)
U.S. Army Corps of Engineers, Plaintiff

Dated this __17__ of October 2022

Walter Riley, individually and d/b/a

Riley's River Ranch, and a Trustee of the Lester Riley Trust

_____

Jeannie Riley, individually and as part of the marital community d/b/a Riley's River Ranch.

_____

Chad Lindgren, remainderman beneficiary of Lester Riley Trust

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Toni Meacham: Tonipierson@rocketmail.com

*s/Timothy M. Durkin*
Timothy M. Durkin, AUSA
Assistant United States Attorney

# EXHIBIT 1A



NORTH

Fence

State Hwy 127

Grain Chutes

Wooden Shed

Guardrails

Concrete pad

Private Property
Boundary
U.S. Army Corps of Engineers

Steel cables and posts

Logs and poles

Gate

Dirt Road

Internal Fence

Wood Fenceposts

Scrap lumber

Steel Fenceposts

Tires

Railroad Ties

Internal Fence

Retaining Wall

Haybales

Feed Pellets

Lime bags

Metal Building and Silo

Tractor Wheels

Loading Dock

Tractor

Truck

Trailer

Silos

Fence Panels

Cargo Container

Miscellaneous Equipment

Irrigation Center-Pivot

Wood Pallets

Pallet Tanks

U.S. Army Corps of Engineers
Boundary

Manure Pile Remnants

Manure Pile Remnants

Manure Pile Remnants

Gate

Railroad Property
Boundary
U.S. Army Corps of Engineers

Downstream Area

Backfilled Carcass Pit

Dirt Road

Scale 1:2,600     1 inch = 217 feet

**Riley River Ranch Encroachment**

Status Report
*Objects Remaining at Encroachment Sites*

January 12, 2018

T 13 N, R 40 E, Sec. 4, 5, 8, Willamette Meridian

This product was produced from geospatial information by the U.S. Army Corps of Engineers. Geospatial data and products may be developed from sources of differing accuracy, accurate only at certain scales, based on modeling or interpretation, incomplete while being created or revised, etc. Using this product for purposes other than those for which it was intended may yield inaccurate or misleading results. USACE assumes no liability for correctness or accuracy, and reserves the right to correct, update, or modify geospatial data and/or products without notification.



US Army Corps
of Engineers®
Walla Walla District

Prepared by: John Gordon
Clarkston Natural Resources Office
100 Fair St, Clarkston, WA 99403
john l.gordon@usace.army.mil
(509) 751-0252

# EXHIBIT 1B



NORTH

Fence

State Hwy 127

Retaining Wall
Haybales
Feed Pellets
Lime bags
Metal Building and Silo

Tractor Wheels
Loading Dock

Steel Drum

Private Property
Boundary
U.S. Army Corps of Engineers

Guardrails
Concrete pad

Dirt Road

Internal Fence

Gate

Steel Drum

Truck

Silos
Fence Panels
Cargo Container
Miscellaneous Equipment
Irrigation Center-Pivot

Wood Pallets
Pallet Tanks

Internal Fence

U.S. Army Corps of Engineers
Boundary

Railroad Property
Boundary
U.S. Army Corps of Engineers

Downstream Area

Dirt Road

Gate

Scale 1:2,600    1 inch = 217 feet

Riley River Ranch Encroachment

Exhibit 1B

Objects Remaining at Encroachment Sites

August 16, 2022

US Army Corps
of Engineers®
Walla Walla District

T 13 N, R 40 E, Sec. 4, 5, 8, Willamette Meridian

This product was produced from geospatial information by the U.S. Army Corps of Engineers. Geospatial data and products may be developed from sources of differing accuracy, accurate only at certain scales, based on modeling or interpretation, incomplete while being created or revised, etc. Using this product for purposes other than those for which it was intended may yield inaccurate or misleading results. USACE assumes no liability for correctness or accuracy, and reserves the right to correct, update, or modify geospatial data and/or products without notification.

# EXHIBIT 2



Riley Encroachment
Impacted and Altered Areas

Central Ferry

# EXHIBIT 3



# Untitled Map

Write a description for your map.

## Legend

Feature 1

Feature 2

# EXHIBIT 4

## Current Projected Phases and Costs of Administrative Disposal process

| Corps | Applicant | Phase I –Survey, Appraisal, ECP, Real Estate Documents, NEPA, NHPA, ESA | Description | Cost Range | Additional Information |
|---|---|---|---|---|---|
| | X | Applicant pays estimated Phase I administrative fees | | | |
| | X | Applicant hires contractor to perform survey and develop legal description | Survey information is needed to be able to move into appraisal phase. | | |
| X | | Analyze survey results | | 5-10K | |
| X | X | Appraisal performed | Appraisal is either performed by Corps or by Applicant's contracted Appraisal. | 10-20K | An appraisal determines opinion of value of parcel being acquired by applicant. |
| X | X | Environmental Condition of Property Report completed (ECP) | Applicant can hire contractor to complete report provided contractor meets legal requirements as defined in American Society for Testing and Materials (ASTM) Standard E 1527-05 or ASTM E 1903. If document is prepared by contractor, Corps will review for sufficiency. | 5-15K | |
| X | | Real Estate Plan development to include disposal report | Completed by Real Estate | $4-5K | |
| X | | Initiate and complete formal consultation with State Historic Preservation Office and Tribal entities to conform with National Historic Preservation Act | Completed by Corps Cultural Resources Staff | 10-15K | |
| X | | Completion of all required National Environmental Policy Act (NEPA) documents to support disposal | The NEPA process includes public involvement on the proposed action at this phase of the project and compliance with all other laws | 10-25K | |
| X | | Completion of all required Endangered Species Act (ESA) documents to support disposal | The ESA process may include consultation with other Federal Agencies | 5-10K | |
| X | | Development of sample quitclaim deed with supporting information (title binder, exhibits, acquisition deeds etc.) | Completed by Real Estate | 2-3K | |
| X | | Notify applicant by letter of appraised value and send sample quitclaim deed for review and move into Phase III | **Total for Phase II** | 51-103K | The Assessed Fair Market Value of the property will determine at what level the disposal will be approved. Phase III will be provided in detail at the completion of Phase II and send to the applicant along with the assessed value and sample quitclaim deed. |
| | | **Phase II Execution of Disposal** | | | |
| | X | Applicant pays any remaining administrative fees | | | |
| | X | Applicant pays Fair Market Value for land they will acquire from Corps | | TBD | To be determined by IVE or Appraisal –IF OVER $25k, MUST BE APPROVED BY DIRECTOR OF RE, HQ |
| X | | Quitclaim deed signed by appropriate Federal Official | | TBD | Value <10,000 = Local Approval, NWD >$25,000/ <$25,000 Headquarters Approval, Value > $50,000 = GSA processing |
| X | | Quitclaim deed sent to applicant | | | |
| X | X | Quitclaim deed recorded in county recorder's office | | | |
| X | | Corps records updated in REMIS and on segment maps | | ~$1K | |
| | | | **Total for Phase III** | ~1K NOT INCLUDING PAYMENT OF FMV OF PROPERTY | |

# EXHIBIT 5

**Exhibit 5**

**<u>Restoration Conditions</u>:**

Defendant shall complete the following restoration actions on the affected federal lands where livestock operations have occurred. Prior to engaging in restoration activities on Corps-managed federal land, Defendants shall coordinate with the Corps representative identified in II.C.4 of the Settlement Agreement/Consent Decree for access:

1) Remove/obliterate the primitive gravel/dirt road leading from Riley private land to the carcass pit(s);
2) Arrange and pay for the repair the boundary markers (any damaged or removed carsonite and witness post), by a state licensed surveyor, in order to prevent disagreement or confusion regarding the boundary.  Defendants also agree not to damage boundary markers in the future or allow his livestock to do so.
3) Remediate any known or discovered toxic, hazardous or contaminated waste resulting from prior cattle ranching operations, livestock trespasses and associated / identified encroachments. The parties further acknowledge and agree that the settlement agreement and consent decree does not relieve either party from responsibility for hazardous, toxic or contaminated waste under other applicable state - federal laws.

# EXHIBIT 6

# RECORD SURVEY

LOCATED IN SW 1/4 SEC. 4, SE 1/4 SEC. 5,
N 1/2 SEC. 8, & N 1/2 OF SECTION 7,
TOWNSHIP 13 NORTH, RANGE 40 EAST, W.M.
WHITMAN COUNTY, WASHINGTON



| LINE | DIRECTION | LENGTH |
|------|-----------|--------|
| L1 | N72°18'46"E | 1265.07 |
| L2 | N0°02'06"W | 531.27 |
| L3 | N87°49'25"E | 559.94 |
| L4 | N72°17'11"E | 1333.76 |
| L5 | N83°27'48"E | 483.09 |
| L6 | S37°59'35"E | 203.02 |
| L7 | N54°21'37"E | 260.80 |

## NOTES:

1. BASIS OF BEARING: BEARINGS SHOWN HEREON ARE STATE PLANE GRID, WASHINGTON COORDINATE SYSTEM (SOUTH ZONE) NAD_83 (2011). DISTANCES ARE GRID. TO OBTAIN TRUE DISTANCES DIVIDE BY A COMBINED FACTOR 0.999866951. CONVERGENCE ANGLE IS +01°57'18"

2. O =DENOTES SET USACE MON PER DESCRIPTIONS ON SHEET 3 OF 3.

3. ● =DENOTES FOUND MONUMENT AS NOTED.

4. ✕ =DENOTES CALCULATED POSITION ONLY, NOT FOUND OR SET.

5. ②=KEY FOR MONUMENT DESIGNATION & DESCRIPTION SHOWN ON SHEET 3 OF 3.

6. (M) = MEASURED GRID BEARING & DISTANCE PER THIS SURVEY    (C)=INDICATES CALCULATED
(R1)= RECORD PER SURVEY RECORDED IN AFN. 601699

[  ] = INDICATES RECORD PER 1875 GLO SURVEY
(  ) = INDICATES RECORD PER CORPS OF ENGINEERS STATE PLANE COORDINATES FROM LITTLE GOOSE PROJECT & FROM LITTLE GOOSE MONUMENTED PROJECT BOUNDARY MAPPING

7. THE SHORE LINE OF LITTLE GOOSE POOL SHOWN HEREON WAS DIGITIZED FROM AERIAL IMAGERY AND IS SHOWN FOR REFERENCE ONLY.

8. THIS SURVEY WAS PERFORMED USING A TRIMBLE 5800 GPS SYSTEM CONFIGURED FOR REAL TIME KINEMATIC SURVEYING. ALL CONTROLLING CORNERS WERE OBSERVED FOR A MINIMUM OF 3 MINUTES OBSERVATION TIME.

9. THE NORTH LINE OF TRACT 205 WAS POSTED WITH 6' ORANGE CARSONITE POST AT 300' INTERVALS. ALTHOUGH TRACT 205 WAS NOT A PART OF THIS SURVEY, TRACT MONUMENTS 205-21 & 205-22 SHOWN HEREON ARE CONTROLLING MONUMENTS FOR POSITIONING MONUMENTS 205-23 & 205-24.

10. THE STATE PLANE COORDINATES SHOWN ON THE NORTHWEST CORNER OF SECTION 7 ARE NAD '83/2011, WASHINGTON SOUTH ZONE, US SURVEY FEET, BASED ON DIRECT RTK GPS TIES FROM NGS OPUS DB POINT "LGA VD-2" PID BBDH06.

SCALE IN FEET
1000  500  0  1000  2000  3000

## SURVEYOR'S CERTIFICATE

THIS MAP CORRECTLY REPRESENTS A SURVEY MADE BY ME OR UNDER MY DIRECTION IN CONFORMANCE WITH THE REQUIREMENTS OF THE SURVEY RECORDING ACT AT THE REQUEST OF THE US ARMY CORPS OF ENGINEERS IN FEBRUARY 2014.

GARY B. WAGNER
CERTIFICATE #30440

DATE: 3/12/14

## AUDITOR'S CERTIFICATE

FILED FOR RECORD THIS _____ DAY OF _____, 20___, A.D., AT
_____ MINUTES PAST _____ M. AND RECORDED IN VOLUME _9_ OF SURVEYS,
PAGE _103_, AT THE REQUEST OF ROGERS SURVEYING.

WHITMAN COUNTY AUDITOR          BY DEPUTY          REV: 02/28/14

722966
Surveys Rec Fee $ 149.00
03/17/2014 10:13 AM Page 1 of 3
Eunice L. Coker, Whitman County Auditor

### RSI
ROGERS
SURVEYING INC., P.S.
1455 COLUMBIA PARK TRAIL
RICHLAND, WA 99352
PHONE (509) 783-4141
FAX: (509) 783-8994
www.rogerssurveying.com

| CLIENT | U.S. ARMY CORPS OF ENGINEERS | JOB 01014 |
|---|---|---|
| PROJECT | RECORD SURVEY LITTLE GOOSE PROJECT BOUNDARY | |

| DRN. BY | DPB | SCALE 1"=1000' | F. B. NO. NONE | SHEET 1 |
| APPROVED | GBW | DATE 2-1-14 | ACAD VER -2013 FILE: 01014.DWG | OF 3 |



# RECORD SURVEY

LOCATED IN SW 1/4 SEC. 4, SE 1/4 SEC. 5,
NORTH 1/2 SEC. 8, & N 1/2 OF SECTION 7,
TOWNSHIP 13 NORTH, RANGE 40 EAST, W.M.
WHITMAN COUNTY, WASHINGTON

### LINE TABLE

| LINE | DIRECTION | LENGTH |
|------|-----------|--------|
| L9 | S37°59'55"E | 203.02 |
| L10 | N54°21'37"E | 280.80 |

(DEED CALLS)
SEE RECORD LEGALS
SHEET 3 OF 3

DETAIL "B"
SCALE: 1"=100'

1"= 200'

200 100 0 200 400 600
SCALE IN FEET

REV: 03/10/14

## AUDITOR'S CERTIFICATE

FILED FOR RECORD THIS _____ DAY OF _____, 20 ___ A.D., AT

MINUTES PAST _____ M, AND RECORDED IN VOLUME _____ 9 _____ OF SURVEYS,

PAGE _103_ , AT THE REQUEST OF ROGERS SURVEYING.

**RSI** ROGERS
SURVEYING INC., P.S.
1455 COLUMBIA PARK TRAIL
RICHLAND, WA. 99352
PHONE (509) 783-4141
FAX: (509) 783-8991
www.rogersurveying.com

| CLIENT U.S. ARMY CORPS OF ENGINEERS | | JOB 01014 |
|---|---|---|
| PROJECT RECORD SURVEY LITTLE GOOSE PROJECT BOUNDARY | | |
| DRN. BY GBW | SCALE 1"=200' | F. B. NO. NONE ACAD VER -2013 SHEET 2 |
| APPROVED GBW | DATE 2-1-14 | FILE: 01014.DWG OF 3 |

GARY B. WAGNER
CERTIFICATE NO.30440

3/12/14
DATE

## PLSS MONUMENT DESCRIPTIONS:

**NW CORNER SEC. 7**

FOUND 1-3/4" IRON PIPE WITH SCREW & WASHER STAMPED AS SHOWN:

MONUMENT FALLS IN NORTH-SOUTH FENCE LINE ON EASTERLY FACING SLOPE APPROXIMATELY 100' WEST OF BOTTOM OF RAVINE.  SET 6' ORANGE CARSONITE 1.0 NORTH.

NO OTHER REFERENCES AVAILABLE.

**SW CORNER SEC. 7**

FOUND 1-3/4" IRON PIPE WITH SCREW & WASHER SET FLUSH WITH THE GROUND AT BASE OF BASALT STONE, STAMPED AS SHOWN:

MONUMENT FALLS AT TOE OF SHALLOW DRAW APPROXIMATELY 30' EAST OF NORTH—SOUTH DIAGC POLE POWER LINE. BUILD COLLAR OF STONE AROUND BASE OF MONUMENT. SET 6' ORANGE CARSONITE 1.0 SOUTH.

NO OTHER REFERENCES AVAILABLE.

**NW CORNER SEC. 8**

FOUND 1-3/4" IRON PIPE WITH SCREW & WASHER STAMPED AS SHOWN:

MONUMENT FALLS ON MODERATELY STEEP EAST FACING SLOPE APPROX. 25' VERTICAL FROM CENTER OF LARGE RAVINE BEARING NORTHWEST.  RAISE A COLLAR OF STONE AROUND 2" DIAM. AROUND MONUMENT.
SET 6' ORANGE CARSONITE 1.0 NORTH.

NO OTHER REFERENCES AVAILABLE.

**SW CORNER SEC. 8**

AN EXTENSIVE SEARCH WAS CONDUCTED FOR THE SOUTHWEST CORNER OF SEC. 8 BUT NO EVIDENCE OF THIS MONUMENT WAS FOUND.  THE CORNER POSITION FALLS IN AN UNSTABLE SANDY BRUSH JUST ABOVE THE LITTLE GOOSE POOL.
EXISTING CORPS OF ENGINEERS CADASTRAL RECOVERY RECORDS INDICATE THIS CORNER WAS SET IN 1962 AT REMAINS OF "OLD SURVEY STAKE" AND FENCE EVIDENCE.  WE HELD THE CORPS OF ENGINEERS RECORD STATE PLANE COORDINATE POSITION FOR THIS CORNER.

**SE CORNER SEC. 8**

AN EXTENSIVE SEARCH WAS CONDUCTED FOR THE SOUTHEAST CORNER OF SEC. 8 BUT NO EVIDENCE OF THIS MONUMENT WAS FOUND.  THE CORNER POSITION FALLS ON A NORTH/EASTERLY FACING SLOPE APPROXIMATELY 1200' HORIZONTALLY FROM THE RIVER. IT APPEARS THAT THE POSITION FOR THIS CORNER WAS CALCULATED BY THE CORPS OF ENGINEERS AT MID—POINT BETWEEN EXISTING CORNERS 1 MILE NORTH AND 1 MILE SOUTH.  THE CORPS CALCULATED NAD_27 POSITION FALLS APPROXIMATELY 640' EAST & 440' NORTH OF AN EXISTING FENCE CORNER WITH FENCES BEARING SOUTH & WEST. WE RE—CALCULATED THE POSITION OF THIS CORNER USING DOUBLE PROPORTIONATE MEASUREMENT WHICH PLACES THE CORNER POSITION IN CLOSE AGREEMENT WITH THE NORTHERLY PROJECTION OF THE EXISTING NORTH SOUTH FENCE.  THIS CORNER WAS NOT RE—SET PER THIS SURVEY.

**NE CORNER SEC. 8**

THE PRESENT DAY MONUMENT FOR THE NORTHEAST CORNER OF SECTION 8 WAS ESTABLISHED IN 1995 BY CORPS OF ENGINEERS SURVEYOR JOHN T. NEZZODA, PLS #26302 PER RECORD SURVEY RECORDED IN AFN. 601699. THIS MONUMENT POSITION BEARS S83°45'05"E, 64.52 FEET FROM THE USCOE NAD_27 POSITION FOR THIS CORNER.

ACCORDING TO THE LAND CORNER RECORD FILED IN BOOK 2, PAGE 75, THE ORIGINAL CORPS MONUMENT MARKING THIS CORNER WAS DESTROYED BY CONSTRUCTION ACTIVITIES. THE 1995 SURVEY ESTABLISHED A REFERENCE MONUMENT FOR THE "NEW" NORTHEAST CORNER OF SECTION 8 AT THE RECORD NAD_27 STATE PLANE COORDINATE POSITION PER THE 1962 CORPS OF ENGINEERS UNRECORDED CADASTRAL RETRACEMENT RECORD.

①=204—21A
FOUND 1-1/2" IRON PIPE WITH BRASS SCREW & WASHER STAMPED:
WITNESSED WITH 6' STEEL "T" POST 1' SOUTH,

②=205—21C
FOUND 1-1/2" IRON PIPE WITH BRASS SCREW & WASHER STAMPED:

③=205—22
FOUND 3-1/2" STANDARD USACE BRASS CAP SET IN CONCRETE AT GROUND LEVEL STAMPED AS SHOWN:

WITNESSED WITH 6' STEEL "T" POST 1' SOUTH,

## NEW MONUMENT DESCRIPTIONS:

④=205—23
SET 3-1/2" ALUM. MON. ON 3/4" x 30" REBAR STAMPED AS SHOWN:
RAISED A COLLAR OF STONE AROUND MONUMENT & SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑤=205—23A
SET 3-1/2" ALUM. MON. ON 3/4" x 30" REBAR STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑥=205—24=302—1
SET 3-1/2" ALUM. MON. ON 3/4" x 30" REBAR STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

## NEW MONUMENT DESCRIPTIONS:

⑦=302—2 (W 1/16th. CORNER)
SET STANDARD USACE 3-1/2" ALUM. CAP ON 3/4" x 30" REBAR STAMPED AS SHOWN:
RAISED A COLLAR OF STONE AROUND MONUMENT & SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑧=302—2A
SET STANDARD USACE 3-1/2" ALUM. CAP ON 3/4" x 30" REBAR STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑨=N1/4 SEC. 8
SET STANDARD USACE 3-1/2" ALUM. MON. ON 30" ALUM. PIPE, 24" IN THE GROUND STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑩=302—3=303—1
SET STANDARD USACE 3-1/2" ALUM. MON. ON 30" ALUM. PIPE, 28" IN THE GROUND STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑪=303—1A
SET STANDARD USACE 3-1/2" ALUM. CAP ON 3/4" x 30" REBAR STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑫=303—2
SET 3-1/2" ALUM. MON. ON 30" ALUM. PIPE, 28" IN THE GROUND STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN.

⑬=303—3
SET STANDARD USACE 3-1/2" ALUM. MON. ON 30" ALUM. PIPE, 28" IN THE GROUND STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN. MONUMENT FALLS 1' SOUTH AND 8' WEST OF CORNER OF FENCES BEARING WESTERLY AND SOUTHEASTERLY.

⑭=303—4
SET STANDARD USACE 3-1/2" ALUM. MON. ON 30" ALUM. PIPE, 28" IN THE GROUND STAMPED AS SHOWN:
SET 6' STEEL "T" POST 1' SOUTH & ATTACH SURVEY MARKER SIGN. MONUMENT FALLS 3.5' SOUTH AND 11' EAST OF CORNER OF FENCES BEARING NORTHWEST & NORTHEAST.

⑮=303—4A
SET STANDARD USACE 3-1/2" ALUM. CAP ON 3/4" x 30" REBAR SET FLUSH WITH TOP OF PAVEMENT STAMPED AS SHOWN:
NO WITNESS POST WAS SET AT THIS LOCATION DUE TO PAVEMENT.

## NARRATIVE:

THIS PROJECT WAS UNDERTAKEN IN JANUARY—FEBRUARY 2014.  THE PURPOSE OF THIS PROJECT WAS TO SURVEY THAT PORTION OF THE LITTLE GOOSE PROJECT BOUNDARY LYING WITHIN SECTIONS 4, 5, 8 AND 9 IN TOWNSHIP 13 NORTH, RANGE 40 EAST, W.M., WHITMAN COUNTY, WASHINGTON, NEAR CENTRAL FERRY STATE PARK.  REAL ESTATE TRACTS 205, 302, 303 AND 304—1 WERE THE FOCUS OF THIS SURVEY EFFORT.  MAJOR WORK ITEMS FOR THIS TASK ORDER INCLUDED DOCUMENTING ANY PERMANENT ENCROACHMENTS ENCOUNTERED ALONG THE PROJECT BOUNDARY LINE, MONUMENTING THE ANGLE POINTS IN THE BOUNDARY AND POSTING THE LINE WITH 6' CARSONITE POSTS.

**Survey History**

THE ORIGINAL GLO SURVEY AND SUBDIVISION OF THIS TOWNSHIP WAS CONDUCTED BY DEPUTY SURVEYOR'S TRUAX & BRIGGS IN 1875.  CORPS OF ENGINEERS CADASTRAL RECOVERY RECORDS FROM 1962 INDICATE CORPS' SURVEYORS RECOVERED AND REMONUMENTED PUBLIC LAND CORNER EVIDENCE IN THE PROJECT AREA.  IN ADDITION, THOSE RECORDS INDICATE STATE PLANE COORDINATES IN THE NAD_27 SYSTEM WERE ESTABLISHED FOR EACH RECOVERED CORNER.  MISSING PLSS CORNERS WERE COMPUTED BY UNKNOWN METHODS.  IN THE EARLY 1990'S, THE CORPS OF ENGINEERS PERFORMED A BOUNDARY SURVEY FOR THE CENTRAL FERRY HABITAT MANAGEMENT UNIT IN SECTION 4 ADJOINING THIS PROJECT.  IN THE COURSE OF THAT SURVEY, THE CORPS RE—ESTABLISHED THE SECTION CORNER OF 4—5—8—9 AT A POSITION APPROXIMATELY 64 FEET EASTERLY OF THE 1962 RECORD POSITION.  SINCE THE 1962 MONUMENT FOR THAT CORNER HAD BEEN DESTROYED BY CONSTRUCTION ACTIVITIES, THE CORPS ESTABLISHED A REFERENCE MONUMENT AT THE 1962 RECORD POSITION. THE CERTIFIED LAND CORNER RECORD FOR THIS CORNER FILED IN BOOK 2, PAGE 75, PROVIDES A MORE DETAILED EXPLANATION OF THE CORNER HISTORY SURROUNDING THE RE—ESTABLISHMENT OF THIS CORNER.

DEED DOCUMENTS FOR AFOREMENTIONED TRACTS 205, 302, 303 AND 304—1 WERE RECORDED BETWEEN 1964—1965, IT IS REASONABLE TO BELIEVE THE PRIVATE LAND ACQUISITIONS DESCRIBED IN THE DEED DOCUMENTS FOR SAID TRACTS WERE BASED ON THE PUBLIC LAND SURVEY CORNERS SHOWN IN THE 1962 CADASTRAL RECOVERY RECORDS.  FOR THIS REASON, THE RECORD POSITION OF THE 1962 SECTION CORNER, NOW OCCUPIED BY THE REFERENCE MONUMENT, WAS HELD AS THE BASIS OF THE LEGAL DESCRIPTIONS FOR TRACTS 303 AND 304—1.  THE LOCATION OF THE EXISTING SIX FOOT CHAIN LINK RELATIVE TO THE NORTHERLY AND EASTERLY BOUNDARY OF TRACT 303 SHOWN ON SHEET 2 OF THE ENCLOSED SURVEY SEEMS TO CONFIRM THAT THE DEEDS FOR THIS TRACT WERE DESCRIBED FROM THE SECTION CORNER OF 4—5—8—9 THAT EXISTED IN 1962.  FOR UNKNOWN REASONS, THE CHAIN LINK FENCE BEARING GENERALLY EAST FROM TRACT CORNER 303—4 DOES NOT FOLLOW THE DEED DESCRIPTION FOR TRACT 303.  THIS FENCE APPEARS TO HAVE BEEN BUILT BY THE GOVERNMENT TO PREVENT ACCESS TO THE CENTRAL FERRY PARK SEWAGE LAGOON.

THE HORIZONTAL CONTROL FOR THIS SURVEY IS BASED ON GPS STATION "LGA V0—2" ESTABLISHED BY ROGERS SURVEYING, INC. IN 2013 FOR THIS ORDER 1.5, LOWER 'LOWER SNAKE VERTICAL DATUM PROJECT. ALL CONTROLLING MONUMENTS FOR THIS SURVEY WERE SURVEYED USING A TRIMBLE 5800 GPS SYSTEM CONFIGURED FOR REAL TIME KINEMATIC SURVEYING.  ALL CONTROLLING MONUMENTS WERE OBSERVED FOR A MINIMUM DURATION OF 3 MINUTES.  REDUNDANT GPS MEASUREMENTS WERE MADE TO ALL CONTROLLING CORNERS.

# RECORD SURVEY

LOCATED IN SW 1/4 SEC. 4, SE 1/4 SEC. 5, N 1/2 SEC. 8, & N 1/2 OF SECTION 9, TOWNSHIP 13 NORTH, RANGE 40 EAST, W.M., WHITMAN COUNTY, WASHINGTON

## LEGAL DESCRIPTIONS:

**TRACT 302 (SEE QUITCLAIM DEED, BOOK 327, PAGE 806—808)**

GOVERNMENT LOTS 1 AND 2, THE SOUTH HALF OF THE NORTHWEST QUARTER, THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER, AND ALL THAT PORTION OF GOVERNMENT LOT 3 AND THE NORTHEAST QUARTER OF SECTION 8 IN TOWNSHIP 13 NORTH, RANGE 40 EAST OF THE WILLAMETTE MERIDIAN, WHITMAN COUNTY, WASHINGTON, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE NORTH LINE OF SAID SECTION 8, 722 FEET WEST OF THE NORTHEAST CORNER OF SAID SECTION;

THENCE SOUTH 17°30' WEST, A DISTANCE OF 1998.6 FEET;

THENCE SOUTH 60°48' WEST, A DISTANCE OF 610 FEET;

THENCE SOUTH 11°11' WEST TO THE ORDINARY HIGH WATER LINE ON THE NORTH BANK OF THE SNAKE RIVER AND THE POINT OF TERMINUS OF THE ABOVE DESCRIBED LINE.

THERE IS EXCEPTED THEREFROM THE EXISTING RIGHT OF WAY OF THE OREGON–WASHINGTON RAILROAD AND NAVIGATION COMPANY LYING IN SAID GOVERNMENT LOTS 1 AND 2.

**TRACT 205 (SEE WARRANTY DEED, BOOK 326, PAGE 449)**

ALL THAT PORTION OF GOVERNMENT LOTS 1, 2, 7, 8 AND 9, THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER AND THE NORTHEAST QUARTER OF SECTION 7 AND THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 8 ALL IN TOWNSHIP 13 NORTH, RANGE 40 EAST OF THE WILLAMETTE MERIDIAN, WHITMAN COUNTY, WASHINGTON, LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT LYING SOUTH 2°36'00" WEST, A DISTANCE OF 1642.96 FEET FROM THE NORTHWEST CORNER OF SAID SECTION 7;

THENCE NORTH 64°27'18" EAST, A DISTANCE OF 1507.35 FEET;

THENCE NORTH 87°02'12" EAST, A DISTANCE OF 4255.69 FEET;

THENCE NORTH 72°19'57" EAST TO THE EAST LINE OF SAID NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 8 AND THE POINT OF TERMINUS OF THE ABOVE DESCRIBED LINE.

**TRACT 303: (SEE BOOK 326, PAGE 450)**

ALL THAT PORTION OF THE SOUTH HALF OF THE SOUTHEAST QUARTER OF SECTION 5 IN TOWNSHIP 13 NORTH, RANGE 40 EAST OF THE WILLAMETTE MERIDIAN, WHITMAN COUNTY, WASHINGTON, LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT LYING SOUTH 84°58'11" WEST, A DISTANCE OF 2473.39 FEET FROM THE SOUTHEAST CORNER OF SAID SECTION 5;

THENCE NORTH 72°17'11" EAST, A DISTANCE OF 1758.37 FEET;

THENCE NORTH 83°27'48" EAST, A DISTANCE OF 483.14 FEET;

THENCE SOUTH 37°59'55" EAST, A DISTANCE OF 203.04 FEET;

THENCE NORTH 54°21'37" EAST TO THE EAST LINE OF SAID SECTION 5, AND THE POINT OF TERMINUS OF THE ABOVE DESCRIBED LINE.

THERE IS EXCEPTED THEREFROM ALL THAT PORTION LYING WITHIN THE EXISTING RIGHT—OF—WAY OF U.S. HIGHWAY NO. 295.

**TRACT 304—1: (SEE BOOK 328, PAGE 570)**

ALL THAT PORTION OF THE SOUTH HALF OF THE SOUTH HALF OF SOUTHWEST QUARTER OF SECTION 4 IN TOWNSHIP 13 NORTH, RANGE 40 EAST OF THE WILLAMETTE MERIDIAN, WHITMAN COUNTY, WASHINGTON, LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT LYING NORTH 40°47'00" WEST, A DISTANCE OF 281.48 FEET FROM THE SOUTHWEST CORNER OF SAID SECTION 4;

THENCE NORTH 54°21'37" EAST, A DISTANCE OF 326.08 FEET;

THENCE SOUTH 78°14'21" EAST TO THE SOUTH LINE OF SAID SECTION 4 AND THE POINT OF TERMINUS OF THE ABOVE DESCRIBED LINE.

THERE IS EXCEPTED THEREFROM ALL THAT PORTION LYING WITHIN THE EXISTING RIGHT—OF—WAY OF U.S. HIGHWAY NO. 295.

## SURVEY REFERENCES:

LITTLE GOOSE LOCK AND DAM—CONSTRUCTION PLANS FOR CAMAS PRAIRIE RAILROAD RELOCATION (CENTRAL FERRY TO PURRINGTON)
LITTLE GOOSE LOCK AND DAM MONUMENTED PROJECT BOUNDARY SHEETS 6 & 7 OF 15
LITTLE GOOSE LOCK AND DAM REAL ESTATE SEGMENT MAP—SEGMENT 3
RECORD SURVEY FOR CENTRAL FERRY HABITAT MANAGEMENT UNIT (HMU), AFN. 601699
CERTIFIED LAND CORNER RECORDS FILED IN BOOK 2 PAGES 72–75
ORIGINAL 1875 GENERAL LAND OFFICE SURVEY OF TOWNSHIP 13 NORTH RANGE 40 EAST
UNRECORDED CORPS OF ENGINEERS CADASTRAL RETRACEMENT RECORDS
WASHINGTON STATE HIGHWAY DEPARTMENT PLANS —MEADOW CREEK TO CENTRAL FERRY VICINITY
DEED DOCUMENTS REFERENCED IN RECORD LEGAL DESCRIPTIONS SHOWN HEREON

## AUDITOR'S CERTIFICATE

FILED FOR RECORD THIS _____ DAY OF _____, 20 ____ A.D., AT

MINUTES PAST _____ M., AND RECORDED IN VOLUME _____ 9 _____ OF SURVEYS,

PAGE _____ 103 _____, AT THE REQUEST OF ROGERS SURVEYING.

722966
Surveys Rec Fee: $ 148.00
02/17/2016 10:16 AM Page 1 of 3
Eunice L. Coker Whitman County Auditor

REV: 03/10/14

GARY E. WAGNER
CERTIFICATE # 30440
3/12/14
DATE

**R S I**
**ROGERS SURVEYING INC., P.S.**
1455 COLUMBIA PARK TRAIL
RICHLAND, WA 99352
PHONE (509) 783–4141
FAX: (509) 783–8991
www.rogerssurveying.com

| CLIENT | | JOB |
|---|---|---|
| U.S. ARMY CORPS OF ENGINEERS | | 01014 |
| PROJECT | RECORD SURVEY | |
| | LITTLE GOOSE PROJECT BOUNDARY | |

| DRN. BY | GBW | SCALE | 1"=200' | F. B. NO. | NONE | SHEET 3 |
|---|---|---|---|---|---|---|
| APPROVED | GBW | DATE | 2-11-14 | ACAD VER | -2013 | OF 3 |
| | | | | FILE: | 01014.DWG | |